RENDERED: NOVEMBER 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1266-MR

DILVER DILSON HERNANDEZ-
AVILA                                                                    APPELLANT


APPEAL FROM BELL CIRCUIT COURT
v.        HONORABLE ROBERT COSTANZO, JUDGE
ACTION NO. 19-CR-00444


COMMONWEALTH OF KENTUCKY                                   APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, DIXON, AND ECKERLE, JUDGES.

DIXON, JUDGE: Dilver Dilson Hernandez-Avila appeals from his conviction for

first-degree sexual abuse in Bell Circuit Court, for which he was sentenced to ten

years' incarceration. After careful review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Eleven-year-old G.N.D. went to work with her mother at a local restaurant in Middlesboro, Kentucky, on September 2, 2019. At some point, G.N.D. went outside with her mother to break down boxes and take out the trash but returned to the restaurant alone to get a drink. Video surveillance footage showed G.N.D., who was wearing a short romper, enter the kitchen of the restaurant, where only Hernandez-Avila could be seen working. G.N.D. testified she knew him as "Wilson" and was only minimally acquainted with him through her various visits to the restaurant. Upon entering the kitchen, Hernandez-Avila approached G.N.D. and proceeded to hug her, open-mouth kiss the side of her face, and grab at G.N.D.'s genital area. She attempted to back up and move away. The video surveillance showed the interaction from two different angles. G.N.D. did not immediately tell her mother about the incident; instead, she requested that her mother's fiancé take her home.

Later that evening, G.N.D. detailed what happened, and her mother immediately took her to the Middlesboro Police Department to report the incident. G.N.D. indicated that "Wilson" put his hand inside of her romper and touched her vagina. Officer Nicholas Capps and Lieutenant Jordan Hurd investigated the incident. After viewing the video surveillance footage, they arrested Hernandez-Avila, who was subsequently indicted for first-degree sexual abuse and later

convicted by a jury.  He was sentenced to ten years' incarceration.  This appeal followed.

## STANDARD OF REVIEW

Hernandez-Avila argues that the trial court erred by allowing Officer Capps to interpret the video surveillance during his testimony.  We review a trial court's rulings on evidentiary issues for an abuse of discretion.  *Meece v. Commonwealth*, 348 S.W.3d 627, 645-46 (Ky. 2011) (citation omitted).  The test for abuse of discretion is whether the trial court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The remainder of Hernandez-Avila's arguments are unpreserved, and he requests palpable error review pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.26.  To prevail on an unpreserved claim of error, Hernandez-Avila must show that the error resulted in manifest injustice.  *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).  "Manifest injustice is error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable."  *Iraola-Lovaco v. Commonwealth*, 586 S.W.3d 241, 245 (Ky. 2019) (internal quotation marks and citation omitted).

-3-

# LEGAL ANALYSIS

Hernandez-Avila first argues the trial court erred by allowing Officer Capps to interpret the surveillance video from the restaurant. On the first day of trial, before the jury was shown the video, the Commonwealth asked Officer Capps what he saw that led to the arrest of Hernandez-Avila. Defense counsel objected, arguing the video itself was the best evidence. The trial court overruled the objection, and Officer Capps responded:

> I observed three different instances where [Hernandez-Avila] tried to reach down to her toward her genital area. At that time, the eleven-year-old girl then pulled away. He then – the second instance was when he open-mouth kissed her – around this area of the face. And then attempted to touch her again underneath with the little girl pushing away once again and shrugging him off.

On the second day of trial, after showing the video to the jury, the Commonwealth recalled Officer Capps, who again testified to what he saw in the video over objection of defense counsel.

Kentucky Rules of Evidence (KRE) 701 limits opinion testimony to matters "rationally based on the perception of the witness[.]" Further, witnesses must testify based upon personal knowledge under KRE 602. "It is for the jury to determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness." *Gordon v. Commonwealth*, 916 S.W.2d 176, 180 (Ky. 1995). A witness is also not permitted to testify concerning

-4-

events he/she did not perceive in real-time. *Boyd v. Commonwealth*, 439 S.W.3d 126, 131-32 (Ky. 2014). Finally, a lay witness "may not interpret audio or video evidence, as such testimony invades the province of the jury, whose job is to make determinations of fact based upon the evidence." *Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014) (citation omitted).

It is clear the trial court abused its discretion by allowing Officer Capps to interpret the surveillance video for the jury. However, "[a] non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth,* 283 S.W.3d 678, 688-89 (Ky. 2009). Here, the error was harmless because the jury viewed the video footage numerous times and was able to interpret it independent of Officer Capps' testimony. *Id.* at 689. Further, G.N.D. provided testimony regarding the events in the video as it was played for her, including that Hernandez-Avila touched her vagina when he grabbed her. Accordingly, there was fair assurance the judgment was not substantially swayed by allowing Officer Capps' interpretive testimony. *Id.*

Hernandez-Avila's second argument is that palpable error occurred when Officer Capps testified that, after viewing the video surveillance, he "had no doubt whatsoever" that Hernandez-Avila had committed first-degree sexual abuse of G.N.D. Certainly, "[t]he issue of guilt or innocence is one for the jury to

determine, and an opinion of a witness which intrudes on this function is not admissible[.]" *Nugent v. Commonwealth*, 639 S.W.2d 761, 764 (Ky. 1982). However, we agree with the Commonwealth that Officer Capps' testimony does not rise to the level of palpable error. The video surveillance footage of the incident was clear (*i.e.*, not grainy, pixelated, or otherwise difficult to discern) and visible from two distinct angles. That, combined with the testimony of G.N.D. and her mother, provided overwhelming evidence against Hernandez-Avila. Accordingly, manifest injustice did not occur.

Hernandez-Avila's third argument is that the jury instruction for first-degree sexual assault resulted in a verdict that was not unanimous. Specifically, he argues that some jurors could have interpreted the instruction to mean the open-mouth kiss constituted the sexual assault, rather than the touching of G.N.D.'s genitals. He points to the prosecutor's statement in closing that the kiss was sexual contact. We disagree with Hernandez-Avila that the prosecutor's statement rises to the level of palpable error.

"[Jury] instructions in criminal cases should conform to the language of the statute. It is left to the lawyers to flesh out the bare bones in closing argument." *Parks v. Commonwealth*, 192 S.W.3d 318, 326 (Ky. 2006) (internal quotation marks and citations omitted). Here, the jury instruction for sexual abuse in the first degree mirrored the language of Kentucky Revised Statutes (KRS)

510.110. Specifically, Instruction No. 1 stated, in relevant part, that the jury was to find Hernandez-Avila guilty if they believed beyond a reasonable doubt that "he subjected G.N.D. to sexual contact; AND . . . [t]hat at the time of such contact, G.N.D. was less than twelve (12) years of age." Further, Instruction No. 3 mirrored the language of KRS 510.010(7) in defining sexual contact as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party[.]"

Although the prosecutor did misspeak by referring to the open-mouth kiss as sexual contact, it was clear from the remainder of the Commonwealth's closing argument that the sexual contact contained in the jury instructions referred to the touching of G.N.D.'s genitals. For example, the prosecutor later told the jury that they "heard Lieutenant Hurd say they discussed the charge and they charged him with sexual abuse in the first[ ]degree because he touched her vaginal area." Moreover, in its closing, defense counsel acknowledged Hernandez-Avila kissed G.N.D., but specifically stated that kissing is not sexual contact. The remainder of the defense's closing focused on the argument that the video did not show Hernandez-Avila actually touching G.N.D.'s genitals, which was the only way he could have committed sexual abuse. The jury instructions, combined with the closing arguments of both parties, clearly indicated the sexual abuse at issue

-7-

was the touching of G.N.D.'s genitals by the defendant. Thus, there was no palpable error.

Hernandez-Avila next argues that the testimony of Officer Capps that the defendant's only identification, upon arrest, was from a deceased individual in North Carolina whose surname was Wilson, was a violation of KRE 404(b). The rule states that evidence of other crimes, wrongs, or acts is "not admissible to prove the character of a person in order to show action in conformity therewith." *Id.*

We again review only for palpable error. There is simply no indication in the record before us that Officer Capps' testimony was elicited to show Hernandez-Avila was acting in conformity with a prior bad act (possession of false identification) when he committed first-degree sexual abuse. Clarification of the defendant's identification was necessary because both G.N.D. and her mother knew him only as "Wilson" and referred to him as such during their testimony. Despite his arguments to the contrary, no mention was made of Hernandez-Avila's immigration status. We find no palpable error.

Finally, Hernandez-Avila argues cumulative error requires reversal of his conviction. Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313

S.W.3d 577, 631 (Ky. 2010).  Cumulative error occurs only "where the individual errors were themselves substantial, bordering, at least, on the prejudicial."  *Id*. (citation omitted).  Although Officer Capps' interpretation of the video was harmless error, as was his testimony that he had "no doubt whatsoever" Hernandez-Avila committed first-degree sexual abuse, the cumulative effect of these two errors does not render the trial fundamentally unfair.  Accordingly, we decline to reverse the trial court on the basis of cumulative error.

**CONCLUSION**

For the foregoing reasons, the judgment of the Bell Circuit Court is AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Aaron Reed Baker<br>Frankfort, Kentucky | Daniel Cameron<br>Attorney General of Kentucky |
| | Jenny L. Sanders<br>Assistant Attorney General<br>Frankfort, Kentucky |